# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| CHERYL THOMPSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| NEMI PUBLISHING, INC. | ) |
| d/b/a FRANKLIN PRINTING, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT AND JURY TRIAL DEMAND

Plaintiff Cheryl Thompson complains against Defendant Nemi Publishing, Inc. d/b/a Franklin Printing ("Defendant" or "Franklin") as follows:

## PARTIES

1. Plaintiff Cheryl Thompson ("Plaintiff") is a resident of Jay, Franklin County, Maine. She was employed by Defendant from October of 2000 until Defendant terminated her employment on March 21, 2022.

2. Defendant Nemi Publishing, Inc. d/b/a Franklin Printing is a Maine corporation headquartered in Farmington, Franklin County, Maine.

## JURISDICTION AND VENUE

3. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Maine Human Rights Act, 5 M.R.S. §§ 4551 *et seq.* ("MHRA"), and the Maine Whistleblowers' Protection Act, 26 M.R.S. §§ 831 *et seq.* ("MWPA").

4. Jurisdiction is based upon 28 U.S.C. § 1331, as the allegations raise

questions of federal law.

5. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) as all acts complained of occurred within the District. Under L.R. 3(b), this action is properly filed in Bangor because the events occurred in Franklin County.

6. Plaintiff has satisfied all necessary administrative conditions precedent prior to bringing this action, including exhausting administrative remedies by timely filing a complaint with the Maine Human Rights Commission and obtaining a Notice of Right to Sue.

## FACTUAL ALLEGATIONS

7. Plaintiff is a 56-year-old woman.

8. Plaintiff worked in various positions at Defendant's Farmington, Maine facility from October of 2000 until Defendant terminated her employment on March 21, 2022.

9. At all times, Plaintiff met or exceeded performance expectations.

10. For several years prior to her termination, Plaintiff's co-workers harassed her based on her sex. They called her sexist and demeaning names like "cunt" and "shovelface," among other highly offensive names.

11. In late-August, 2019, Plaintiff began reporting to her employer that her male co-workers were harassing her.

12. Specifically, Plaintiff reported to HR Director David Nemi, and Bindery Supervisor Mike Nemi, that, as she passed her co-worker Tim, he loudly

commented: "I can't believe something fucks that." She also reported that Tim and another co-worker, Rob, repeatedly called her a "cunt."

13. David Nemi acknowledged that the co-workers' conduct was a "form of harassment" and that they would "take care of it." He did not.

14. About one week after Plaintiff reported the sex-based harassment to her employer, she received a handwritten note in her home mailbox that said: "Nice try you lowlife fucking cunt #shovelface."

15. Plaintiff felt extremely threatened by the note, and easily connected it to her recent workplace report about being harassed. Specifically, the offensive nickname "shovelface" was coined by her co-workers, and no one outside of work had ever called her that.

16. Plaintiff reported the threatening note to the Jay Police Department. After disclosing that she had been having issues with harassing co-workers, a Jay Police officer encouraged Plaintiff to report the note to her employer, saying that it appeared to be "work related."

17. The following day, Plaintiff reported the note to David Nemi, and sent him a photo of the note.

18. David Nemi did not follow-up with Plaintiff regarding the note.

19. Plaintiff continued to experience harassment at work. In fact, Tim and Rob recruited others (male and female) to harass Plaintiff. The harassment intensified at work.

20. Plaintiff did her best to keep to herself at work. Her co-workers, however, continued to make offensive comments to her about her sex, appearance, and intelligence.

21. At the same time, the same co-workers began making petty and false reports about her to management.

22. Each time a supervisor confronted her about one of these reports, Plaintiff explained that these were the same people who were harassing *her*, and continued to harass her.

23. Defendant took no meaningful measures to address Plaintiff's complaints. Rather, David Nemi, Mike Nemi, and sometimes Richard Nemi, simply told Plaintiff to "keep [her] blinders on, and get back to work."

24. The harassment continued, unabated and unaddressed.

25. In April of 2021, David Nemi, Mike Nemi, and Richard Nemi, called Plaintiff into a meeting and told her that they had received a complaint that she was "taking pictures and videotaping people" with her phone.

26. Plaintiff told them that (a) she did not know how to use the video recording function on her phone; and (b) that she did not take photos of *anyone*. Rather, she had taken a photo of where she placed her lunch because her co-workers had recently taken to smashing her lunch when she left it in the breakroom.

27. Once again, they instructed Plaintiff to "be the bigger person," to "put [her] blinders on," and to "zip it!"

28. The next day, a Saturday, Franklin President Greg Nemi called Plaintiff and asked her to come to work to do something for him at the shop. While there, Plaintiff related to Greg Nemi what had been going on; that her co-workers were making false reports against her and continued to bully and harass her.

29. Greg Nemi told Plaintiff that he knew she hadn't done anything wrong. He seemed sympathetic, but did not offer any solutions.

30. Greg Nemi did not take any measures to address Plaintiff's complaints.

31. In May of 2021, Richard Nemi called Plaintiff into the HR office again, after a co-worker falsely reported that Plaintiff had "taunted him."

32. Plaintiff was overwhelmed with the pervasive harassment. She told Richard, Mike, and David Nemi that she'd had enough, and that she couldn't endure the harassment anymore. She indicated that she was going to resign.

33. Richard, Mike, and David Nemi persuaded Plaintiff not to resign by offering her a $2/hour raise. Plaintiff reluctantly accepted.

34. Over the subsequent months, Plaintiff continued to try to ignore the ongoing harassment and hostility from her co-workers. She kept headphones on while she worked, and tried to minimize her interactions with her co-workers, thus, denying them opportunities to harass and belittle her.

35. In January of 2022, Richard Nemi applauded Plaintiff's performance and gave her a $1.30/hour raise.

36. On or about February 28, 2022, Plaintiff reported to Mike Nemi that her co-workers were drinking alcohol at work on the weekends, when there were no

5

supervisors on duty. Plaintiff reported that her co-worker, Lois, had stacked empty beer cans in the warehouse, and was smoking indoors.  She reported that, given the industrial equipment they used at the facility, it was dangerous for employees to be intoxicated while working.  Plaintiff was concerned, not only for her own safety, but for the safety of her co-workers.

37. Mike Nemi responded: "Ok."

38. On March 3, 2022, Plaintiff's co-worker, Pam, came to work smelling strongly of alcohol, and appeared to be heavily intoxicated.  Plaintiff had smelled alcohol on Pam before, but on this day, she was visibly impaired.

39. Pam began yelling at Plaintiff, making sexual gestures at her, and a invading Plaintiff's personal space in a physically threatening manner.  Plaintiff, indeed, felt physically threatened, and was concerned that Pam was going to hit her.  She told Pam to get away from her.

40. Approximately 30 minutes later, Richard Nemi approached Plaintiff and instructed her to go to the office.  When she arrived, David and Mike Nemi were present.  They told Plaintiff that they received "complaints of you harassing people."  Plaintiff said: "Are you kidding?  I just got attacked out there!"

41. They told Plaintiff they were sending her home for the day, and to not come in the next day.

42. Plaintiff responded that Pam wreaked of alcohol and nearly attacked her.  She stated that if they did not address the workplace drinking problem, she

would contact the "Labor Board." At that point, they instructed Plaintiff to step out of the office and wait.

43. Minutes later, they called Plaintiff back into the office and said that she *could* work the next day. Richard Nemi again told her to "put the blinders on and zip it!"

44. Shortly after this event, Defendant cut Plaintiff's overtime, and changed her shift from 6 AM – 4:30 PM, to 6 AM to 2:30 PM.

45. Approximately two weeks later, on March 20, 2022, Plaintiff received a text message from Greg Nemi, instructing her not to report to work the next day. Plaintiff immediately called Greg Nemi to ask him why. He told her "something's going on. I'll get back to you Monday."

46. The next day, Greg Nemi texted Plaintiff and said they could meet or he could call her. Plaintiff asked him to call her.

47. On the phone, David Nemi told Plaintiff he "no longer [saw] a future" for her at Franklin, and terminated her employment.

## COUNT I
**(Unlawful Retaliation – MHRA, MWPA, Title VII)**

48. Plaintiff repeats the allegations contained in Paragraphs 1 through 47.

49. Plaintiff, acting at all times in good faith, reported to her employer, and opposed, what she believed was unlawful sex discrimination and harassment. Plaintiff reasonably believed the harassment amounted to violations of state and federal laws and rules.

50. Plaintiff, acting at all times in good faith, reported to her employer, and opposed, what she reasonably believed constituted conditions and practices that jeopardized her health and safety, and that of her co-workers.

51. Plaintiff's reports and opposition to unchecked sex discrimination, and dangerous working conditions, constitute opposition to her employer's conduct.

52. Plaintiff's actions set forth above constitute "protected activity" under the Maine Whistleblowers' Protection Act, Maine Human Rights Act, and Title VII of the Civil Rights Act of 1964.

53. By subjecting Plaintiff to workplace hostility and by terminating her employment, Defendant took "adverse employment action" against Plaintiff.

54. There exists a causal connection between Plaintiff's protected reporting activities and the adverse employment action she experienced.

55. As a direct and proximate result of Defendant's unlawful discrimination and retaliation, Plaintiff suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment against Defendant for all damages to which she may be entitled, including, but not limited to:

   A. An order for Defendant to reinstate Plaintiff to her position, or front pay in lieu of reinstatement;
   B. Back wages dating back to March 20, 2022;
   C. Compensatory damages including, but not limited to, mental anguish, loss of dignity and other intangible injuries;
   D. Punitive damages as determined by a jury;
   E. An award of attorney's fees and all costs incurred herein; and
   F. All other damages to which Plaintiff may be entitled.

## COUNT II
### (Disparate Treatment Based on Sex – TITLE VII, MHRA)

56. Plaintiff repeats the allegations contained in Paragraphs 1 through 55.

57. Plaintiff, a female, is a member of a protected class.

58. By treating Plaintiff in disrespectful and demeaning ways, subjecting her to unlawful harassment and a hostile work environment, disregarding and refusing to investigate her complaints of harassment, and terminating her employment, Defendants, through one or more management level employees, took adverse employment action against Plaintiff.

59. Plaintiff's sex was a motivating factor in Defendants' actions.

60. As a direct and proximate result of Defendants' actions, set forth herein, Plaintiff suffered damages to be proven at trial.

WHEREFORE, Plaintiff prays for judgment against Defendants for all damages to which she may be entitled, including, but not limited to:

    A. An order for Defendant to reinstate Plaintiff to her position, or front pay in lieu of reinstatement;
    B. Back wages dating back to March 20, 2022;
    C. Compensatory damages including, but not limited to, mental anguish, loss of dignity and other intangible injuries;
    D. Punitive damages as determined by a jury;
    E. An award of attorney's fees and all costs incurred herein; and
    F. All other damages to which Plaintiff may be entitled.

## COUNT III
### (Hostile Work Environment Based on Sex – Title VII and MHRA)

61. Plaintiff hereby repeats, re-alleges, and incorporates by reference the foregoing paragraphs 1-60 of this Complaint.

62. Plaintiff, a female, is a member of a protected class.

63. Defendant knowingly subjected Plaintiff to years of unlawful harassment and abuse based on her sex, treated her in disrespectful and demeaning ways, refused to take actions to abate the unlawful harassment, and terminated her employment. Such treatment was sufficiently severe or pervasive so as to alter the conditions of Plaintiff's employment and create an abusive and hostile work environment. Defendant's conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive, and Plaintiff in fact did perceive it to be so.

64. Defendant is liable for the acts and omissions of Plaintiff's supervisors, managers, and management personnel.

65. Defendant is liable for the acts and omissions of Plaintiff's co-workers because Plaintiff reported co-worker harassment to several of her supervisors, managers, and management personnel, all of whom refused to take prompt remedial action to abate the unlawful working conditions.

66. As a direct and proximate result of Defendant's actions as set forth herein, Plaintiff suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment against Defendants for all damages to which she may be entitled, including, but not limited to:

    A. An order for Defendant to reinstate Plaintiff to her position, or front pay in lieu of reinstatement;
    B. Back wages dating back to March 20, 2022;
    C. Compensatory damages including, but not limited to, mental anguish, loss of dignity and other intangible injuries;
    D. Punitive damages as determined by a jury;

  E. An award of attorney's fees and all costs incurred herein; and

  F. All other damages to which Plaintiff may be entitled.

**PURSUANT TO FED. R. CIV. P. 38(b), PLAINTIFFS REQUEST TRIAL BY JURY OF ALL CLAIMS SO TRIABLE BY RIGHT.**

<u>Dated</u>: May 31, 2023    Respectfully Submitted,

           */s/ Andrew P. Cotter*
           Andrew P. Cotter
           andrew@cliffordclifford.com

           */s/ James A. Clifford*
           James A. Clifford
           james@cliffordclifford.com

CLIFFORD & CLIFFORD, LLC
10 Moulton Street, 5th Floor
Portland, Maine 04101
(207) 613-9465